UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KENDELL J. HORAK,                      )
                                       )
            Plaintiff,                 )
                                       )
                                       )
v.                                     )        No.:   3:08-CV-347
                                       )               (VARLAN/SHIRLEY)
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )


## <u>MEMORANDUM OPINION</u>

This case is before the Court for disposition of plaintiff's Motion for Judgment on the

Pleadings [Doc. 13] and defendant's Motion for Summary Judgment [Doc. 17]. Plaintiff

Kendell J. Horak ("plaintiff") seeks judicial review of the decision of the Administrative Law

Judge (the "ALJ"), which is the final decision of Defendant Michael J. Astrue, Commissioner

of Social Security ("the Commissioner").

On July 22, 2005, plaintiff filed an application for supplemental security income

("SSI) [Tr. 12]. On July 28, 2005, plaintiff filed an application for a period of disability and

disability insurance benefits ("DIB") [Tr. 12]. In both applications, plaintiff alleged a period

of disability which began March 9, 2001 [Tr. 12]. After his applications were denied initially

and also denied upon reconsideration, plaintiff requested a hearing. On March 12, 2008, a

hearing was held before an ALJ to review the determination of plaintiff's claim [Tr. 385-

411]. On May 27, 2008, the ALJ found that plaintiff was disabled beginning March 25,

2007, but not disabled prior to that date. The Appeals Council denied plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner [Tr. 2-5]. Plaintiff now seeks judicial review of the ALJ's decision.

## I.     ALJ Findings

The ALJ made the following findings:

1.    The claimant met the insured status requirements of the Social Security Act on March 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since March 9, 2001, the alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    The claimant has a combination of impairments, which considered together, is "severe."

4.    Prior to March 25, 2007, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.404.1520(d) and 416.920(d)).

5.    The claimant's subjective complaints as they pertained to the period prior to March 25, 2007, were not credible to the extent alleged.

6.    Prior to March 25, 2007, the date the claimant became disabled, the claimant had the following limitations: lifting a maximum of about twenty pounds; standing and/or walking about six hours in an eight-hour workday; sitting about six hours in and eight-hour workday no prolonged standing or walking; avoid twisting or turning his head; no over the shoulder reaching; and avoid frequent bending, stooping, kneeling, squatting and climbing.

7.    Prior to March 25, 2007, the claimant's impairments did not prevent the claimant from performing his past relevant work as a housing clerk.

8.    Beginning on March 25, 2007, the severity of the claimant's coronary artery disease and other impairments met the requirements of section(s) 4.04C or Appendix 1.

9.	The claimant was not disabled prior to March 25, 2007 (20 C.F.R. 404.1520(g) and 416.920(g)), but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. 404.1520(d) and 416.920(d)).

11.	The claimant was not under a disability within the meaning of the Social Security Act  at any time through March 31, 2006, the date last insured (20 C.F.R. 404.315(a) and 404.320(b)).

[Tr. 14-16].

## II.	Disability Eligibility

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability.  42 U.S.C. § 423(a)(1).  An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability.  *See* 42 U.S.C. § 1382(a).  "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner

pursuant to a five-step analysis summarized as follows:

1.   If claimant is doing substantial gainful activity, he is not disabled.

2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

404.1520).  A claimant bears the burden of proof at the first four steps.  *Id.*  The burden of

proof shifts to the Commissioner at step five.  *Id.*  At step five, the Commissioner must prove

that there is work available in the national economy that the claimant could perform.  *Her v.*

*Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S.

137, 146 (1987)).

## III.    Standard of Review

When reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528. On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Serv.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. Analysis

On appeal, plaintiff argues that substantial evidence does not support the ALJ's determination that he was not under a disability during the period from March 9, 2001, the alleged onset date, through March 25, 2007, the date of plaintiff's second heart attack. Plaintiff argues that the ALJ erred when making this determination by:

(A)   Improperly rejecting plaintiff's subjective complaints about the severity and limiting effects of his chronic pain during the period at issue [Doc. 14, p. 6]; and

(B)   Improperly rejecting the medical opinion of plaintiff's treating physician, Dr. Peter Stimpson, M.D. [*Id.*, p. 7].

Plaintiff argues that the ALJ's errors caused him to determine an onset date of plaintiff's disability that was incorrect and unsupported by the record. Plaintiff maintains that he was treated for chronic pain beginning in March 2001 and that this chronic pain rendered him totally unable to "sustain gainful employment." [*Id.*, p. 2]. Plaintiff concludes that the ALJ should have determined an earlier disability onset date of March 9, 2001.

In response, the Commissioner contends that the ALJ considered the entire record and that substantial evidence supports his determination that plaintiff's disability onset date was March 25, 2007. The Commissioner argues that the ALJ's finding as to plaintiff's credibility was supported by substantial evidence because plaintiff's subjective complaints of pain were inconsistent with the record as a whole [Doc. 18, pp. 11-12]. The Commissioner also argues that the ALJ's decision to reject the opinion of Dr. Stimpson as it related to the period from

6

March 9, 2001, to March 25, 2007, was supported by substantial evidence because (1) the opinion was inconsistent with Dr. Stimpson's treatment notes; (2) the opinion was based on few examinations; and (3) the opinion was a statement of plaintiff's current condition at the time it was given and *not* a statement of plaintiff's past condition during the period at issue [*Id.*, p. 13]. The Commissioner concludes that substantial evidence supported the ALJ's determination that prior to March 25, 2007, plaintiff had the residual functional capacity ("RFC") to perform his past relevant work and therefore was not under a disability and not entitled to DIB and SSI payments.

### A. The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ did not provide valid reasons for discounting the credibility of his subjective complaints about the severity and limiting effects of his chronic pain during the period at issue (March 9, 2001 – March 25, 2007). Plaintiff argues that the ALJ gave only the following two reasons for rejecting his subjective complaints: "(1) a conclusory statement that the complaints exceeded the objective findings; and (2) Plaintiff continued to work after the motor vehicle accident." [Doc. 14, p. 6].[1] Plaintiff argues that these reasons are not "sufficient to survive scrutiny." [*Id.*, p. 6]. The Court disagrees.

An ALJ must determine a DIB and SSI claimant's RFC between steps three and four of the five-step sequential disability evaluation process. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is defined as "the most [the claimant] can still do despite [his] limitations."

_____

[1] The motor vehicle accident to which plaintiff refers occurred on or about October 12, 1998 [Doc. 14, p. 2; Tr. 271-84].

20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must consider "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations," and "descriptions and observations of [the claimant's] limitations from [his] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3).

When a claimant alleges that a severe impairment causes pain that results in functional limitations, the ALJ must determine whether that allegation "can reasonably be accepted as consistent with the objective medical evidence *and* other evidence." 20 C.F.R. § 404.1529(a) (emphasis added). "Objective medical evidence" means "medical signs and laboratory findings." *Id.*; *see* 20 C.F.R. § 404.1528 (medical signs are "anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements" and laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques"). "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [the claimant's] impairment(s) and any related symptoms affect [the claimant's] ability to work." 20 C.F.R. § 404.1529(a). "Other evidence" specifically includes the claimant's own

subjective statements about his pain and any description provided by the claimant about how that pain affects his activities of daily living and ability to work. *Id.*

When a claimant's allegation about the extent to which pain limits his functioning cannot be substantiated with objective medical evidence, the ALJ must decide whether the "other evidence" corroborates or supports the allegation. 20 C.F.R. § 404.1529(c)(3); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *see* 20 C.F.R. § 404.1545(e) ("Pain...may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological, or psychological abnormalities considered alone."). Typically, the most important pieces of "other evidence" are the claimant's own subjective statements about the intensity, persistence, and functionally limiting effects of the pain. In order to properly determine whether the claimant's own subjective statements actually support his allegation of functional limitation due to pain, the ALJ must first "make a finding on the credibility of [the claimant]'s statements based on a consideration of the entire case record," including "any statements and other information provided by treating or examining physicians." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. Essentially, the ALJ must decide whether the claimant is telling the truth about the degree to which pain limits his personal activities. *Id.* If the ALJ decides that the claimant's statements are credible, then he may move on to determine whether the statements in fact support the claimant's allegation. If the ALJ decides that the claimant's statements are not credible, then he may discount their probative value accordingly and move on to consider whether there is additional "other evidence" that corroborates or supports the claimant's allegation.

In this case, plaintiff alleges that his chronic back and neck pain was so severe that it rendered him totally unable to work during the period at issue. The ALJ found at steps two and three of the sequential evaluation process that plaintiff's combination of impairments was "severe," but did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, during the period at issue [Tr. 14]. Before moving to step four, the ALJ was required to determine plaintiff's RFC for the period at issue [Tr. 15]. Because the ALJ found that the functionally limiting effects of plaintiff's pain during the relevant period could not be substantiated by objective medical evidence, he was required to consider whether "other evidence" corroborated or supported plaintiff's allegation that his pain was so severe that it left him totally unable to work. *See* 20 C.F.R. § 404.1529(a). "[S]ymptoms, such as pain, are subjective and difficult to quantify," 20 C.F.R. § 404.1529(c)(3), so the most important pieces of "other evidence" in this case were plaintiff's own statements and subjective complaints about the severity of his pain and its limiting effects.

The ALJ made the following credibility finding: "[plaintiff]'s subjective complaints are not credible to the extent alleged during the period prior to March 25, 2007. They exceed what could reasonably be expected in light of the objective findings. [Plaintiff] continued to work after the motor vehicle accident and the first myocardial infarction." [Tr. 15]. The ALJ provided two broad reasons for his credibility finding. First, the ALJ pointed out that plaintiff's complaints were inconsistent with and unsupported by the objective medical record from the period at issue [Tr. 15]. The ALJ also noted that plaintiff's complaints were

inconsistent with the medical opinion, [Tr. 372-376], of consultative examiner Dr. Jeffrey Summers, M.D., provided on January 4, 2006 [Tr. 15]. Second, the ALJ noted that there was evidence that plaintiff ultimately stopped working for reasons not related to his allegedly disabling pain [Tr. 15].

An ALJ's finding about the credibility of a claimant's allegation of disabling pain is entitled to deference. *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) ("while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence"). Thus, if the two reasons given by the ALJ as support for his finding that plaintiff was not credible are supported by substantial evidence, the Court must find that the credibility determination was proper.

### (i)     Inconsistency of Plaintiff's Subjective Complaints with Objective Medical Evidence and Assessments of Examining Physicians

With regard to the ALJ's first justification, plaintiff argues that there was in fact objective medical evidence that was consistent with his subjective complaints [Doc. 14, p. 6]. Plaintiff argues that "imaging studies," "cervical spine CT imaging," and his record of prescriptions for narcotic pain management are all consistent with his subjective complaints of disabling pain during the period at issue [*Id.*, p. 6]. The Commissioner responds that the "imaging studies," [Tr. 376], to which plaintiff refers actually "revealed only moderate

degenerative changes." [Doc. 18, p. 11]. The Commissioner argues that notes from plaintiff's physical examination reports during the relevant period are inconsistent with plaintiff's subjective complaints. The Commissioner also argues that some of plaintiff's statements to his examining physicians were not consistent with his allegation of disabling pain. Finally, the Commissioner argues that plaintiff's subjective complaints were not consistent with the opinion of consultative examiner Dr. Jeffrey Summers, M.D., [Tr. 372-76], and the opinions of the state disability determination services ("DDS") physicians, [Tr. 343-50, 352-65; Doc. 18, p. 12].

The Court finds that the ALJ's conclusion that plaintiff's subjective complaints were inconsistent with the objective medical record as a whole and with the assessments of examining physicians was both reasonable and supported by substantial evidence. The following three examples of inconsistency are sufficiently illustrative. First, plaintiff's allegation of disabling pain is inconsistent with DDS physician Dr. Greg Kesterson's examination notes from July 23, 2003 [Tr. 298]. Dr. Kesterson recorded that plaintiff's lower back pain was "90% resolved." [Tr. 298]. Second, plaintiff's allegation of disabling pain is inconsistent with treatment notes from February 23, 2006, provided by plaintiff's treating physician, Dr. Peter Stimpson [Tr. 179]. Dr. Stimpson recorded that plaintiff's physical examination was "normal" despite plaintiff's subjective complaints of "pain in spine, GI upset, nausea, bloody cramps, poor sleep, and fatigue." [Tr. 179]. Third, plaintiff's allegation of disabling pain is inconsistent with plaintiff's physical DDS assessment conducted on January 15, 2006 [Tr. 343-50]. The DDS consultant noted that her

determination of plaintiff's RFC was "based on complaints of pain which are not otherwise supported by treatment MER [medical evidence of record] or recent evaluations, but which do not result in weakness or neuro deficit." [Tr. 350]. The consultant also noted that "there is no MER of current treatment." [Tr. 350]. Thus, the consultant's notes indicate that she based her RFC determination on plaintiff's subjective complaints even though they were unsubstantiated. Even then, the consultant still concluded that plaintiff had the RFC to lift and/or carry 50 pounds occasionally and 25 pounds frequently and to stand and/or walk for a total of about 6 hours in an 8-hour workday [Tr. 344].

The Court concludes that the ALJ's first reason for discounting plaintiff's credibility—that plaintiff's subjective complaints were inconsistent with the medical record as a whole—was reasonable and supported by substantial evidence.

### (ii)    Evidence that Plaintiff Stopped Working for Reasons Not Related to his Back and Neck Pain

The second reason the ALJ gave for finding plaintiff's subjective complaints of pain to be incredible was that "[plaintiff] continued to work after the motor vehicle accident and the first myocardial infarction." [Tr. 15]. In other words, the ALJ determined that plaintiff ultimately quit working *not* because he was functionally limited by pain or by cardiac problems, but because of other reasons. The Court finds that the ALJ's determination was reasonable and supported by substantial evidence. Plaintiff reported the following information to DDS psychologist Dr. William Kenney, Ph.D., on January 16, 2006:

> [Plaintiff] mentioned that his last full-time job was in 2001 at the University of Tennessee. He said he was forced to leave.

> He mentioned both being ill and the fact that he wanted to take
> about 19 [credit] hours to graduate, and his boss would not let
> him take off the time during a day to attend certain classes. He
> had worked there a total of four years. Asked why he did not
> get another full-time job, he mentioned having pneumonia for a
> year as well as other medical problems including his back, and
> he said he had three cars stolen from him and that is another
> reason why he never got another full-time job.

[Tr. 370]. The Commissioner points out that plaintiff's alleged pneumonia is unsubstantiated in the record [Doc. 18, p. 12]. In his briefing, plaintiff did not point to any evidence in the record that supports his statement to Dr. Kenney that he suffered from pneumonia.

Plaintiff testified at the hearing before the ALJ concerning his departure from his job at the University of Tennessee as follows: "I resigned because I noticed I was two hours short of sick leave and I was kind of coerced into resigning because it's better to resign than get terminated because you don't have quite enough sick leave to cover." [Tr. 393-94]. Later during the hearing, plaintiff testified that the primary reasons that he was using his sick leave were "problems in walking" and problems "using my hands." [Tr. 400]. Plaintiff also testified that concurrently with his employment at the University of Tennessee he was "trying to finish out that degree I didn't get when I was younger." [Tr. 394].

The Court concludes that it was reasonable for the ALJ to discount the credibility of plaintiff's allegation of disabling pain based on his determination that plaintiff left his job and subsequently did not seek employment for reasons unrelated to pain.

### (iii) The ALJ's Credibility Finding was Supported by Substantial Evidence

As discussed *supra* in parts (i) and (ii), the Court finds that both of the ALJ's reasons for finding that plaintiff's allegation of disabling pain was not credible were supported by substantial evidence. Accordingly, the Court finds that the ALJ's finding that "[plaintiff]'s subjective complaints, as they pertained to the period prior to March 25, 2007, were not credible to the extent alleged." [Tr. 14]. Because the ALJ articulated two valid reasons for discounting plaintiff's subjective statements about the severity of his back and neck pain and its limiting effects, the Court finds no basis for disturbing the credibility finding. *See Rogers*, 486 F.3d at 249 ("credibility determinations regarding subjective complaints" must be "reasonable and supported by substantial evidence").

### B. The ALJ's Consideration of Dr. Stimpson's Opinion

Plaintiff argues that the ALJ erred when determining his RFC by rejecting the opinion of his treating physician, Dr. Peter Stimpson, M.D., without providing any valid reason for doing so [Doc. 14, pp. 7-8]. Plaintiff argues that the only rationale provided by the ALJ for rejecting Dr. Stimpson's opinion was a statement that the opinion appeared to be "a current assessment" of plaintiff's abilities and limitations and *not* an assessment of plaintiff's abilities and limitations during the period at issue (March 9, 2001 – March 25, 2007) [Doc. 14, p. 7]. Plaintiff argues that the ALJ's rationale is invalid and "pure conjecture" because "there is no indication that Dr. Stimpson completed a 'current assessment,' as opposed to an

assessment as to Plaintiff's abilities on or before the DLI [date last insured, March 31, 2006]." [*Id.*, p. 8].

The Commissioner argues in response that the ALJ's decision to reject the opinion of Dr. Stimpson as it related to the period from March 9, 2001, to March 25, 2007, was supported by substantial evidence because (1) the opinion was inconsistent with Dr. Stimpson's treatment notes; (2) the opinion was based on only a few examinations; and (3) the opinion must have been a statement of plaintiff's current condition at the time it was given and *not* a statement of plaintiff's past condition for the period at issue given that it was so inconsistent with plaintiff's treatment record from that period [Doc. 18, p. 13].

Dr. Stimpson completed a "Physical Medical Opinion Form" on March 25, 2008 [Tr. 171-73]. The form specifically instructed Dr. Stimpson to assess plaintiff's limitations prior to March 2006 and each of its questions was written in the past tense [Tr. 171]. Dr. Stimpson opined that plaintiff's subjective complaints seemed reasonable and that plaintiff suffered from "severe" pain [Tr. 172-73]. Dr. Stimpson stated that plaintiff was capable of sitting for 4 hours out of an 8-hour workday, 1 hour at a time, and standing for 2 hours out of an 8-hour workday, 30 minutes at a time [Tr. 171]. Dr. Stimpson stated that plaintiff could never lift and/or carry more than 10 pounds [Tr. 171]. Dr. Stimpson also stated that plaintiff required 4 hours of bedrest during a normal workday [Tr. 172].

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable

medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1502). An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544; *see* 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to the treating source's opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); *Blakley*, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's opinion, the ALJ must conduct a six-factor analysis. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the ALJ expressly considered Dr. Stimpson's opinion. The ALJ stated as follows:

> Dr. Stimpson opined the claimant had much more severe limitations, but his assessment was dated March 25, 2008. The form asked Dr. Stimpson to assess the claimant's condition prior to March 31, 2006, *but considering the treatment history* it appears he provided a current assessment instead. It is entitled to great weight during the period since the claimant's second myocardial infarction that occurred on or about March 25, 2007, *but it is not adequately supported* earlier than that date.

[Tr. 15] (emphasis added).

The Court agrees with plaintiff's statement that the ALJ's assumption that Dr. Stimpson recorded plaintiff's current limitations as opposed to his pre-March 2006 limitations was "pure conjecture." However, the Court notes that the ALJ did provide two reasons, italicized above, for rejecting Dr. Stimpson's opinion. First, the ALJ found that Dr. Stimpson's opinion was inconsistent with plaintiff's treatment history. *See* 20 C.F.R. § 404.1527(d)(2), - (4). Second, the ALJ found that there was an inadequate evidentiary basis for Dr. Stimpson's opinion. *See* 20 C.F.R. § 404.1527(d)(3).

Because Dr. Stimpson was plaintiff's treating physician, the ALJ was required to give Dr. Stimpson's opinion controlling weight if it was "well-supported by medically acceptable

clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544; *see* 20 C.F.R. § 404.1527(d)(2). But the ALJ found that Dr. Stimpson's opinion was *not* supported by plaintiff's objective treatment record and *was* inconsistent with the record as a whole. If the ALJ's finding was supported by substantial evidence, then it was a valid reason for discounting Dr. Stimpson's opinion.

The ALJ stated that he found Dr. Stimpson's opinion to be inconsistent with plaintiff's treatment history [Tr. 15]. The Court finds that, although the ALJ's phrasing—"considering the treatment history"—is vague, there is substantial evidence in the record that supports the ALJ's finding. First, the record indicates that Dr. Stimpson made substantive notes for only four appointments with plaintiff over the duration of the treatment period.[2] The Court finds that it was reasonable for the ALJ to determine that the length of the treatment relationship and the infrequency of substantive examination and analysis were factors that favored reducing the weight given to Dr. Stimpson's assessment. *See* 20 C.F.R. § 404.1527(d)(2)(i). Second, Dr. Stimpson's own treatment notes are inconsistent with his assessment. Throughout the course of treating plaintiff with pain medication, Dr. Stimpson recorded positive progress and positive subjective feedback from plaintiff. On March 9, 2007, Dr. Stimpson recorded that plaintiff reported "sleeping good" and a decrease in immobility [Tr.

---

[2] The record indicates that Dr. Stimpson saw plaintiff for follow-up visits during the period from February 23, 2006 to January 24, 2008. Dr. Stimpson's notes from these appointments include substantive observations in only four cases [Tr. 176-79]. All of the other appointments were recorded as follow-ups on "meds for chronic pain" or "chronic pain management." [Tr. 174-79].

178]. On May 4, 2007, Dr. Stimpson noted that plaintiff was "improved." [Tr. 176]. On June 5, 2007, Dr. Stimpson noted that plaintiff was "better." [Tr. 176]. Nothing in Dr. Stimpson's treatment notes supports his March 25, 2008 assessment.

The ALJ also found Dr. Stimpson's assessment to be inadequately supported by medical signs and laboratory findings. *See* 20 C.F.R. § 404.1527(d)(3). This finding was also supported by substantial evidence. For example, in his notes from a February 23, 2006, appointment with plaintiff, Dr. Stimpson recorded that plaintiff's objective examination was "normal" despite plaintiff's subjective complaints [Tr. 179]. Dr. Stimpson did not record any objective basis for his assessment.

Though the ALJ did not specifically lay out the 20 C.F.R. § 404.1527 factor analysis in his decision, he did explain that (1) Dr. Stimpson's assessment was inconsistent with plaintiff's treatment history, *see* 20 C.F.R. § 404.1527(d)(2); and (2) Dr. Stimpson did not provide an adequate evidentiary basis to support his opinion, *see* 20 C.F.R. § 404.1527(d)(3). The ALJ focused on these two factors to appropriately decide that Dr. Stimpson's assessment was entitled to no weight. The Court finds that even if the ALJ erred by failing to expressly consider the other factors, the error was harmless and does not warrant remand. The two reasons provided by the ALJ are sufficient to support a determination that Dr. Stimpson's opinion was entitled to no weight. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). The Court therefore

finds that the ALJ's decision to give Dr. Stimpson's opinion no weight was supported by substantial evidence.

## V. Conclusion

The Court concludes that the ALJ properly reviewed and weighed the evidence to determine that plaintiff was not disabled through March 31, 2006, the date last insured. Substantial evidence supports the ALJ's findings and conclusions. For the foregoing reasons, plaintiff's Motion for Judgment on the Pleadings [Doc. 13] is hereby **DENIED**; defendant Commissioner's Motion for Summary Judgment [Doc. 17] is hereby **GRANTED**; the Court **AFFIRMS** the Commission's decision denying plaintiff's application for benefits; and this case is **DISMISSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE